**Brian D. Whelan, Esq.  (SBN 256534)**
**Joseph Stolz, Esq. (SBN 346959)**
**WHELAN LAW GROUP, A Professional Corporation**
**1827 East Fir Avenue, Suite 110**
**Fresno, California   93720**
**Telephone: (559) 437-1079**
**Facsimile:  (559) 437-1720**
**E-mail: brian@whelanlawgroup.com**
**E-mail: joseph@whelanlawgroup.com**

Attorneys for: Plaintiffs HEIDI HALLENBERG and BRANDON WALKER

UNITED STATE DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| HEIDI HALLENBERG, AND BRANDON WALKER,<br><br>Plaintiff(s),<br><br>v.<br><br>DARRICK WALKER, BDH GROUP, LLC, B & D WALKER FARMS & HEIDI WALKER, A California General Partnership,  B & D WALKER FARMS, A California General Partnership,   AND DOES 1 THROUGH 20, INCLUSIVE,<br><br>Defendants. | Case No. 1:24-CV-01486-BAM<br><br>**PLAINTIFFS' MOTION FOR RELIEF FROM LATE FILING DUE TO EXCUSABLE NEGLECT; AND DECLARATION OF BRIAN WHELAN IN SUPPORT THEREOF**<br><br>Date:   February 14, 2025<br>Time:   9:00 AM<br>Dept.:  8 (6th Floor)<br>Judge:  Judge Barbara A. McAuliffe |

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

Plaintiffs Brandon Walker and Heidi Hallenberg, by and through undersigned counsel, respectfully submits this Motion for Relief from Late Filing under Federal Rule of Civil Procedure 6(b)(1)(B).

## I.
## INTRODUCTION.

Plaintiffs seeks relief from this Court to file an opposition to Defendant's Motion to change venue two days after the filing deadline due to a calendaring error. This error was unintentional and due to excusable neglect. Plaintiffs respectfully request that the Court accept the late-filed opposition

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

1

**PLAINTIFFS'  MOTION FOR RELIEF FROM LATE FILING DUE TO EXCUSABLE NEGLECT, AND DECLARATION IN SUPPORT THEREOF**

as timely and permit this very important matter to be determined on the merits. ***Defendant Brandon Walker, by and through his counsel, does not object to this relief so long as commensurate additional time is permitted on reply – which Plaintiffs consent and agree to.*** The opposition papers and declarations offered in support of the opposition to the motion to change venue are attached as Exhibit A to the declaration of Brian D. Whelan below.

## II.
## FACTUAL BACKGROUND.

1.    The opposition to Defendant's motion for change of venue was due on January 21, 2025.

2.    Due to a calendaring mistake, the deadline was inadvertently miscalculated and incorrectly entered into the firm's calendar as January 23, 2025 for mail service and January 30, 2025 for personal service.

3.    Plaintiff's counsel discovered the error on January 23, 2025, and immediately took steps to finalize and file the opposition. Further, Plaintiff's counsel immediately contacted Defense counsel by email and phone concerning the shortcoming and sought a stipulation and order to correct the error. In response, Defense counsel indicated that there is no objection to the relief sought so long as Defendant is afforded an additional two days on reply – which Plaintiffs consent and agree to.

4.    The opposition was filed on January 23, 2025, two days after the original deadline.

## III.
## LEGAL STANDARD.

Under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, the Court may, for good cause, extend the time for a party to act if the party failed to act because of "excusable neglect." The determination of excusable neglect is an equitable one, taking into account the following factors:

1.    The danger of prejudice to the opposing party;

2.    The length of the delay and its potential impact on judicial proceedings;

3.    The reason for the delay, including whether it was within the reasonable control of the movant; and

4.    Whether the movant acted in good faith. (*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

**PLAINTIFFS' MOTION FOR RELIEF FROM LATE FILING DUE TO EXCUSABLE NEGLECT, AND DECLARATION IN SUPPORT THEREOF**

# IV.
# ARGUMENT

### 1.    No Prejudice to the Opposing Party

The two-day delay in filing has caused no prejudice to Defendant, and Defendant does not object to the two-day delay so long as Defendant has an additional two days on reply. The hearing on the motion is scheduled for February 14, 2025, allowing ample time for Defendant to review and respond to the opposition with an additional two days time.

### 2.    Minimal Delay and No Impact on Judicial Proceedings

The delay has not disrupted the Court's schedule. Plaintiffs' counsel promptly filed this motion upon realizing the error and took immediate steps to rectify the situation.

### 3.    Reason for the Delay

The delay was caused by a calendaring error in counsel's office and its calendaring program. This error, while regrettable, was unintentional and due to excusable neglect. Counsel takes responsibility and has implemented additional safeguards to prevent similar mistakes in the future.

### 4.    Good Faith of the Movants

Plaintiffs' counsel acted in good faith, promptly addressing the mistake upon its discovery and filing this motion to seek the Court's relief. There is no indication of bad faith or dilatory conduct.

# V.
# CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that the Court grant relief from the late filing and deem Plaintiffs' opposition to the motion for change of venue, filed on January 23, 2025, and attached as Exhibit A to the Declaration of Brian D. Whelan, as timely filed.

Dated: January 23, 2025

WHELAN LAW GROUP,
A Professional Corporation

By Brian D. Whelan,
Attorneys for Plaintiffs HEIDI HALLENBERG and
BRANDON WALKER

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

**PLAINTIFFS'  MOTION FOR RELIEF FROM LATE FILING DUE TO EXCUSABLE NEGLECT, AND DECLARATION IN SUPPORT THEREOF**

**DECLARATION OF BRIAN D. WHELAN**

I, Brian D. Whelan, declare as follows:

1.  I am an attorney duly licensed to practice law in the State of California and I am counsel of record for Plaintiffs Brandon Walker and Heidi Hallenberg in this matter. The following facts are within my personal knowledge and, if called as a witness, I can testify competently to each of them.

2.  This declaration is made in support of Plaintiffs' Motion for Relief from Late Filing under Federal Rule of Civil Procedure 6(b)(1)(B).

3.  Due Date and Miscalculation: The deadline to file Plaintiffs' opposition to Defendant's motion to change venue was January 21, 2025. Unfortunately, due to an error in our calendaring system, the deadline was mistakenly recorded as January 23, 2025 for service by mail, with January 30, 2025 entered as the last day for personal service. Upon review, I believe the error occurred because my staff inadvertently calculated the 14-day deadline based on the hearing date, rather than the filing date, resulting in an incorrect entry in the system. This miscalculation disregarded the actual hearing date entirely. For the aforementioned, I am responsible and do not ascribe blame to my staff.

4.  Discovery of Error and No Prejudice to Opposing Party: When I was preparing the opposition, I discovered the calendaring error on January 23, 2025, and immediately contacted opposing counsel to seek a stipulation for relief. Opposing counsel, Patrick Toole, reported that Defendant would not object to this relief in this motion so long as Defendant has an additional two days to respond. To this, I agreed. I apologize for the inconvenience this has caused this Court.

5.  Good Faith and Corrective Measures: I have acted in good faith in addressing this issue. Upon discovering the mistake, I took immediate steps to rectify the situation by finalizing and filing the opposition. A true and correct copy of all of the opposition papers are attached hereto as Exhibit A. Additionally, I have implemented measures in my practice to prevent similar calendaring errors in the future, including additional cross-checks of deadlines.

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

4

PLAINTIFFS' MOTION FOR RELIEF FROM LATE FILING DUE TO EXCUSABLE NEGLECT, AND DECLARATION IN SUPPORT THEREOF

6.     Equitable Relief Warranted: Given the minimal delay, the absence of prejudice to the opposing party, and my prompt action in addressing the error, I respectfully request that the Court grant Plaintiffs/Defendant's Motion for Relief from Late Filing.

I declare under penalty of perjury under the laws of the United States and those of the State of California, that the above is true and correct.

Executed on January 23, 2025, at Fresno, California.

By Brian D. Whelan

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

5

**PLAINTIFFS' MOTION FOR RELIEF FROM LATE FILING DUE TO EXCUSABLE NEGLECT, AND DECLARATION IN SUPPORT THEREOF**

Exhibit A

Brian D. Whelan, Esq.  (SBN 256534)
brian@whelanlawgroup.com
Joseph Stolz, Esq. (SBN 346959)
joseph@whelanlawgroup.com
WHELAN LAW GROUP, A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California  93720
Telephone:   559-437-1079
Facsimile:   559-437-1720

Attorneys for:  Plaintiff HEIDI HALLENBERG and BRANDON WALKER

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| HEIDI HALLENBERG, AND BRANDON WALKER,<br><br>             Plaintiffs,<br><br>v.<br><br>DARRICK WALKER, BDH GROUP, LLC, B & D WALKER FARMS & HEIDI WALKER, A California General Partnership, B & D WALKER FARMS, A California General Partnership, AND DOES 1 THROUGH 20, INCLUSIVE,<br><br>             Defendants. | Case No. 1:24−CV−01486−BAM<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**<br><br>Date:   February 14, 2024<br>Time:   9:00 a.m.<br>Courtroom: 8 (6th Floor)<br>Judge: Honorable Barbara A. McAuliffe<br><br>Trial Date: |

1    Plaintiffs HEIDI HALLENBERG ("Heidi") and BRANDON WALKER ("Brandon")

2    (collectively "Plaintiffs"), hereby submits this memorandum in support of his opposition to

3    Defendant DARRICK WALKER's ("Darrick") motion to transfer venue under 28 USC §1404(a).

**I.**

**PRELIMINARY STATEMENT.**

6    In attempting to drum up a false narrative to move the case from its proper and most

7    convenient venue in California, Defendant inexplicably claims that "Plaintiffs' Complaint fails to

8    establish factual allegations that California courts have *any* legitimate interest" (emphasis in

9    original) in hearing this matter. This fantasy Defendant attempts to construct, much like his

10   financial chicanery at issue in this case, falls apart upon examination. In actuality, the Walker

11   family has resided and done business in California for generations. Brandon Decl. ¶ 2. It was

12   only at Darrick's request,[1] that one of the three entities in this case, Defendant BDH Group LLC.

13   ("BDH") was merged out to Wyoming in 2013. Brandon Decl. ¶ 5. Otherwise, two out of three

14   entities at issue in this case are California entities,[2] the Plaintiffs are California residents—

15   Defendant himself having a home and business here—the important witnesses relevant to the

16   claims in this case are almost exclusively in California, the claims in this case are subject to

17   California law, and the harm—i.e. among other things, the fraud and forged signatures—took

18   place in California as to California loans and businesses.

19   Indeed, Defendant's evidence is lacking and he will not doubt improperly attempt to

20   rectify this on reply. See *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D.

21   Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments

22   in the reply brief than those presented in the moving papers."); *United States v. Romm*, 455 F.3d

23   990, 997 (9th Cir. 2006) ("We decline to consider this issue [raised for the first time in the reply]

---

25   [1] Contrary to Defendants claims, Brandon did not want to move Defendant BDH Group LLC. ("BDH") to Wyoming, but only did so at his request. Brandon Decl. ¶ 5

26   [2] In his motion Defendant attempts to make a mountain out of the molehill that is fact that two California
27   partnerships in this action are being sued derivatively. It is true that this matters for establishing whether any given venue is proper. Defendant's attempts to stretch this distinction, beyond this context, is without authority or merit however. Indeed, once a venue is determined to be proper, as California is, this distinction has no bearing on the *convenience* of said venue or what laws govern. These two California partnerships are governed by California law and their business is concerned with California crops.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO TRANSFER UNDER 28 USC §1404(a)**

1    because 'arguments not raised by a party in its opening brief are deemed waived.'").

## II.

## LAW AND LEGAL ARGUMENT.

### A. **Venue is Proper in California**.

Venue is proper in California. See generally Wright & Miller, Federal Practice and Procedure, § 3732 Procedure for Removal—Venue in Removed Actions ("Once removed, the propriety of the venue is governed by Section 1441(a), and it simply is immaterial whether venue was proper in the state court in which the action was filed; the state venue statutes no longer apply" and "It . . . is immaterial that the federal court to which the action is removed would not have been a proper venue if the action originally had been brought there.") Moreover, venue is proper (1) in which any defendant resides, if all defendants reside in the same state; (2) **in which a substantial part of the events or omissions giving rise to the claim occurred**; or (3) in which any defendant may be found, if there is no other district in which the action may be brought. See 28 U.S.C. § 1391(b). As is relevant here and also relevant as to the convenience factors discussed in the following sections, a substantial part of the events or omissions giving rise to the claims in this action, as clearly plead in the Complaint, occurred in and around Fresno and California in general and venue is proper here.

Indeed, regardless of whether they are properly construed as Defendants or as "the real party in interest on the plaintiff's side," the two California partnerships named in this case are at the center of this controversy and are governed under California law. _Messinger v. United Canso Oil & Gas Ltd.,_ 80 F.R.D. 730, 733 (D. Conn. 1978). BDH itself was originally incorporated in California. Brandon Decl. ¶ 5.  BDH has substantial California property holdings including four industrial lots in Merced, two in Tulare, and one in Snelling.[3] Brandon Decl. ¶ 6.

Recently, Darrick operated and controlled the finances of BDH as if they were 100% his own, even where Plaintiff objected (including an unauthorized withdrawal of $1M). Brandon Decl. ¶ 7. The following expenses were for Darrick's sole benefit and were misappropriated out of BDH accounts: Property Taxes for his Orange County Home and Teton County Home;

---

[3] It also had a 40 acre pistachio orchard in Madera County that was recently sold.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

2

1    Automobile expenses for his children; Extensive personal travel via private jets;  Insurance not

2    related to BDH assets or activities; Supplies for ag. land not even owned by BDH; Grape stakes,

3    and the list goes on. *Id.* A forensic accountant reviewed records supplied by Moss Adams to

4    determine those moneys Darrick took from BDH for his personal use. *Id.* A range between

5    $7,027,277.85 on the low end and $10,201,447.85 on the high end was found – and this is a

6    conservative set of figures without regard for interest. *Id.* Neither Heidi nor Brandon consented to

7    Darrick's extravagant personal uses of BDH resources for Darrick's sole benefit nor did they

8    come to learn of that use until 2023 at which point they tried to informally resolve the disputes,

9    but could not. *Id.*

10        Likewise, the two California partnerships, B&D Walker Farms and Heidi Walker Farms,

11   are BDH affiliated California entities that farm California crops—California obviously has a

12   strong interest in regulating and protecting its businesses. Brandon Decl. ¶ 11. As to these entities

13   Darrick has improperly exerted control over and diverted funds away from these California

14   partnerships towards himself. In particular, Darrick instructed principals at the Wonderful

15   Processing Company (located in California)—which processes the partnerships' California

16   crops—to divert funds away from the partnership accounts to an account solely controlled by

17   himself. Brandon Decl. ¶ 12. Darrick did the same things for the California almond crops,

18   contacting the Almond Company, an exporter in Madera, telling them not to remit payment for

19   the California almonds to partnership accounts where either Brandon or Heidi had access.

20   Brandon Decl. ¶ 13. As a result, the partnerships' operations will be dramatically impacted as the

21   capital needed to fund those operations have been improperly diverted away to Darrick.

22        Darrick also demonstrated control over B&D Walker Farms by using $600,000 from the

23   partnership to close on a property purchase, an amount he has yet to repay. Brandon Decl. ¶ 14.

24   Additionally, Central Valley AG ("CVAG") has an office in California and facilitated the initial

25   deposit for some of the property purchases by BDH  and received an acquisition fee. *Id.*

26        Then what initially revealed the many years of embezzlement by Darrick is that Jenhi

27   Ciapponi, who was historically the banker for the Walker entities, reached out from Fresno

28   Madera Farm Credit to Heidi and Brandon, also located in Fresno, for signatures pertaining to a

1    loan that Darrick had applied for without Plaintiffs' knowledge. Brandon Decl. ¶ 8. After

2    explaining that they had not authorized such a loan, Ciapponi indicated that she had just received

3    their signatures from Darrick. *Id.* This was false and the signatures were forgeries. *Id.*

4       Further forgeries have been uncovered. Darrick forged Brandon's signature on critical

5    documents filed with the California Secretary of State, again heavy implicating California's

6    interest in this action. Brandon Decl. ¶ 9. This includes documents designating Brandon as the

7    registered agent for WB Timber LLC and WBCP4 LLC, actions taken without Brandon's

8    knowledge or consent. *Id.* Decl. Forged signatures also appear on filings for WBCP4, which are

9    included in Exhibit D of Document 5.2 (page 25) and Exhibit C of Document 5.3 (page 12). *Id.*

10   Similarly, the sale of a Fresno FedEx property and the subsequent purchase of a Walgreens in

11   Minneapolis and a potato farm in Idaho occurred without Brandon's knowledge or consent.

12   Brandon Decl. ¶ 10. Brandon only learned of these transactions in late 2023, well after their

13   completion. *Id.*

14       Obviously, as discussed, a majority of the actions and resulting harm in this occurred in

15   California and thus will be attested to by California witnesses. California is the proper and most

16   convenient venue.

17    **B.**  **Venue Transfer Law.**

18       California, the home forum of Plaintiffs as well as the two California partnerships, and

19   even Defendant at least some of the time, is the most convenient and just forum. Section 1404(a)

20   also transfers of venue: "for the convenience of parties and witnesses, in the interest of justice, a

21   district court may transfer any civil action to any other district or division where it might have

22   been brought." Id. Section 1404(a) thus provides three categories of factors to consider:

23   "convenience of the parties, convenience of the witnesses, and interest of justice." *E. & J. Gallo*

24   *Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994). These then "break down to a

25   number of relevant considerations: convenience of witnesses, judicial economy, relative ease of

26   access to proof, and availability of compulsory process." *Id.* On a motion to transfer, "[t]he

27   movant bears the burden of establishing the propriety of transfer by a clear and convincing

28   showing." *Costello v. Home Depot U.S.A., Inc.*, 888 F.Supp.2d 258, 266. Defendant has failed to

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

4

1    meet this burden.

2        Though 1404(a) partially displaces the common law doctrine of forum non conveniens,

3    "forum non conveniens considerations are helpful in deciding a § 1404 transfer motion." _Decker_

4    _Coal Co. v. Commonwealth Edison Co.,_ 805 F.2d 834, 843 (9th Cir. 1986). To that end, once

5    venue is determined to be proper in both districts, "[t]he Court must consider public factors

6    relating to 'the interest of justice' and private factors relating to 'the convenience of the parties

7    and witnesses." _Id._ Thus, the court may consider factors pertaining to those categories such as:

8
9    > (1) the location where the relevant agreements were negotiated and
> executed, (2) the state that is most familiar with the governing law, (3) the
> plaintiff's choice of forum, (4) the respective parties' contacts with the
> forum, (5) the contacts relating to the plaintiff's cause of action in the
> chosen forum, (6) the differences in the costs of litigation in the two
> forums, (7) the availability of compulsory process to compel attendance of
> unwilling non-party witnesses, and (8) the ease of access to sources of
> proof. _Jones v. GNC Franchising, Inc.,_ 211 F.3d 495, 498–99 (9th Cir.
> 2000); Compare with _Vu v. Ortho-McNeil Pharm., Inc.,_ 602 F. Supp. 2d
> 1151, 1156 (N.D. Cal. 2009) ("(1) plaintiffs' choice of forum, (2)
> convenience of the parties, (3) convenience of the witnesses, (4) ease of
> access to the evidence, (5) familiarity of each forum with the applicable
> law, (6) feasibility of consolidation with other claims, (7) any local
> interest in the controversy, and (8) the relative court congestion and time
> of trial in each forum.")

10
11
12
13
14
15
16

17    Furthermore, in ruling on a motion to transfer venue, the district court must consider: "(1) the

18    relative convenience of the selected forum and the proposed forum; (2) the possible hardship to

19    the plaintiff if the court grants the motion; (3) the interests of justice; and (4) the deference to be

20    accorded the plaintiffs' choice of forum." _Jacobson v. Hughes Aircraft Co.,_ 105 F.3d 1288, 1302

21    (9th Cir.1997).

22        Missing from Defendant's analysis of the factors for venue transfer is the substantial

23    deference shown to plaintiff's choice. _N. S B v. Pascarella_ (E.D. Cal., June 26, 2020, No.

24    220CV29KJMKJNPS) 2020 WL 3492562, at *1, quoting _Decker Coal Co. v. Commonwealth_

25    _Edison Co.,_ 805 F.2d 834, 843 (9th Cir. 1986) ("defendant must make a strong showing of

26    inconvenience to warrant upsetting the plaintiff's choice of forum.") As the United States

27    Supreme Court has explained, "unless the balance is strongly in favor of the defendant, the

28    plaintiff's choice of forum should rarely be disturbed." _Gulf Oil Corp. v. Gilbert,_ 330 U.S. 501,

1  508 (1947). In this way, the moving party "bears a heavy burden of showing a clear balance of

2  inconveniences to it." *E. & J. Gallo Winery*, 899 F. Supp. at 466. As will be demonstrated,

3  Defendant's does not meet this burden.

4  **1.  Convenience of the Parties Strongly Favors California Over Wyoming.**

5  Contrary to his intimations otherwise, Fresno is a convenient venue for Defendant, as

6  evidenced by his personal and substantial contacts with Fresno and California in general. Indeed,

7  Darrick has a residence in Newport Beach which he stays at on a near monthly basis. Brandon

8  Decl. ¶ 4. He also pays property taxes and has business offices in both Danville and Fresno. *Id.*

9  For instance, Darrick operates a second CVAG office in Fresno and CVAG's website itself lists

10  11 entities with operations and properties primarily in California. Brandon Decl. ¶ 6. Darrick

11  frequently makes trips to California to manage personal and business matters in Fresno. Brandon

12  Decl. ¶ 4.

13  Plaintiffs, by contrast, have no personal contact with Wyoming. They own no residences

14  there, they do not work there, and they do not travel. Brandon Decl. ¶ 3; Heidi Decl. ¶ 3. Brandon

15  has been to Wyoming twice, last in April 2021. Brandon Decl. ¶ 3. Heidi has never been to

16  Wyoming. Heidi Decl. ¶ 3. Instead, Plaintiffs both live in Fresno and oversee day-to-day

17  operations of the family's enterprise, including the two California partnerships' California-based

18  farms. Brandon Decl. ¶ 2; Heidi Decl. ¶ 2. At most, Defendant simply points to one out of three

19  of Plaintiffs' business interests named in this case, i.e. BDH, which was moved to Wyoming

20  from California at Darrick's initiative. This is insufficient, ignores the focus of the claims in this

21  lawsuit and the other entities which all pertain to California, and does not speak to convenience.

22  Thus, even taken charitably, Defendant at most seeks to shift the minor inconvenience—if

23  any—from himself, i.e. going to a state he already lives and works in, to create a major

24  inconvenience for Plaintiffs, i.e. forcing them to a state they do not live or work in and have only

25  visited 2 times in their life, in total. This is improper: transfer of venue should not be granted "if

26  the result is merely to shift the inconvenience from one party to another" and that is, at best, what

27  this motion would do. *Harris Trust and Savings Bank v. SLT Warehouse Co., Inc.*, 605 F.Supp.

28  225, 227 (N.D.Ill.1985); See also *Wright & Miller,* Federal Practice & Procedure: Jurisdiction *§*

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

1  *3848, at 246*. Fresno is the most convenient place for both parties.

2       **2.  Convenience of Witnesses Strongly Favors California Over Wyoming.**

3       The party moving for transfer on the ground of the convenience or availability of

4  witnesses "must specify the identity of key witnesses and the nature of their likely testimony, and

5  support these statements with affidavits." *Costello v. Home Depot U.S.A., Inc.*, D.Conn.2012, 888

6  F.Supp.2d 258 (emphasis added); *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. at 466

7  ("Affidavits or declarations are required to identify key witnesses and a generalized statement of

8  their anticipated testimony.") To that end, the "relative convenience to the witnesses is often

9  recognized as the most important factor." *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F.

10  Supp. 2d 1141, 1147 (C.D. Cal. 2009).

11       In contrast to Defendant's witnesses, Plaintiffs' witnesses are directly pertinent to the

12  claims and issues of the action:

13       **Lisa Harrison** – Darrick's right hand man. She is his secretary in Danville, California

14  and is responsible for control for all the UBS accounts for BDH and the two California

15  paternships. As discussed, this is the money at issue that was improperly diverted. Anyone who

16  wants access to said money has to go through Ms. Harrison. A primary issue in this case is the

17  improper movement of these funds to and from these accounts, and Ms. Harrison's testimony will

18  be essential to resolving that issue. Brandon Decl. ¶ 16.

19       **James Mathisrud** – One of the business partners that owns CVAG and is located in

20  Orange County, California. BDH has ownership interest in some of the CVAG's and was in the

21  initial deposit for some of the property purchases at issue and received an acquisition fee. Mr.

22  Mathisrud's testimony regarding how they are operated will be important as to the loan

23  transaction and disentangling BDH's finances. Brandon Decl. ¶ 17.

24       **Jenhi Ciapponi** – the original whistleblower on the forgeries and fraudulent practices at

25  issue. She has historically been the banker for the Walker entities. Located at Fresno Madera

26  Farm Credit in California. Will be able to testify to the forgeries regarding the improper loan

27  Darrick sought. Brandon Decl. ¶ 18.

28

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

7

1      **David Lyons** – Agreed to be an important witness by both Parties. Defendant also admit

2    that Mr. Lyons is located in Las Vegas, which is much closer to California than Wyoming.

3    Brandon Decl. ¶ 19.

4      **David Britz** – A California businessman and farmer, Britz has partial ownership of the

5    Idaho investment, Fedex Building, and WB Timber LLC, alongside BDH. Though a more minor

6    issue, his testimony will give insight into how these properties and transactions surrounding them

7    occurred and Darrick due diligence or lack thereof. Brandon Decl. ¶ 20.

8      **Wonderful Processing Company** – Located in California. Darrick instructed principals

9    at the Wonderful Processing Company—which processes the partnerships' California crops—to

10    divert funds away from their accounts to an account solely controlled by Darrick. This improper

11    diversion is part of the basis of the lawsuit and the principal's testimony regarding instructions

12    given by Darrick is central to this case. Brandon Decl. ¶ 21.

13      **Almond Company** – Located in Madera, California. Darrick told the Almond Company

14    to not remit payment to partnership accounts where either Brandon or Heidi had access. This

15    improper diversion is part of the basis of the lawsuit and the principal's testimony regarding

16    instructions given by Darrick is central to this case. Brandon Decl. ¶ 22.

17      **Moss Adams - Michael Holtermann** – Moss Adams' is the accounting firm for all the

18    named entities in this action. Michael Holtermann, at the local Fresno branch, is the Walker

19    family's accountant and handles those specific accounts for the named entities. Thus, Michael

20    Holterman will be able to testify to financial operation and records of these named entities.

21    Brandon Decl. ¶ 23.

22      **Moore, Grider & Company** – Rick Holland – Another Walker family accounting firm. It

23    operates solely out of Fresno. Holland handled the named entities finances prior to the merge out

24    to Wyoming. Moore, Grider, and Company continue to handle WB entities. This witness will be

25    able to testify to the WB entities financial operations and records. Brandon Decl. ¶ 24.

26      By contrast, Defendant's witness showing is lacking, often resorting to quantity over

27    quality. This fails to carry their burden, as in balancing the convenience of witnesses, the court's

28    analysis "'should not rest on the number of witnesses ... in each locale' but rather the court

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

8

1   'should evaluate the materiality and importance of the anticipated ... witnesses' testimony and

2   then determine their accessibility and convenience to the forum." *Bos. Telecommunications Grp.,*

3   *Inc. v. Wood*, 588 F.3d 1201, 1209 (9th Cir. 2009). In his motion, Darrick lists four specific

4   witnesses, Trisha D. Johnson, David Lyon, Jeff Wilkinson and Nick Jones. Only two of these

5   witnesses are in Wyoming (Ms. Johnson and Mr. Wilkinson), and, as discussed, Mr. Lyons is

6   located in Las Vegas and is thus closer to California than Wyoming.

7           Moreover, Ms. Johnson is just employed by the service that Darrick used to form the

8   Wyoming portion of BDH and served as their initial—not even the current—service agent. Her

9   testimony has little, if any importance to the improper diverting and misappropriation of funds by

10  Darrick—the fact that BDH merged out to Wyoming in 2013 is not a factual contention at issue

11  in this case. Brandon Decl. ¶ 5. Likewise, Mr. Wilkson is listed for his ability to "testify that

12  Brandon was aware of the transition out of California and into Wyoming." Moving Papers 11:18-

13  21. Again, to the extent that this refers to BDH originally being formed in California and then

14  later being merged out to the BDH in Wyoming years later, this is not a contested issue. Brandon

15  Decl. ¶ 5.  Nowhere in the complaint does it say that Bradon was unaware of BDH becoming a

16  Wyoming company—he signed the papers. *Id.* This witness and Defendant's representation of his

17  testimony has little, if any, value to resolving the issues of breach of fiduciary duty pertaining to

18  the diverting and misappropriation of funds nearly a decade after the move. Defendant has not

19  offered any compelling witness testimony to warrant upsetting the Plaintiff's forum choice.

20          Defendant's witnesses hidden in his declaration are of even less value, as the declaration

21  generally gestures to long lists of superfluous witnesses for the same topic and without any

22  indication of what any given person on the list could testify to. For example, paragraph 16 states

23  "For purposes of the FedEx building transactions, BDH worked with the following contacts" and

24  then proceeds to list twelve possible witnesses for that topic. Little if any context is given as to

25  what these individuals could testify nor does this question warrant twelve witnesses—its merely a

26  question of whether Darrick did this without or without Brandon's knowledge. Additionally,

27  some "witnesses" in the list are not even specific people or entities such as d. "Multiple general

28  contractors and subcontracts"—it is not clear why these contractors would have any bearing on

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

1  the issues in this case. Moreover, none of these alleged witnesses are even in Wyoming. Nor is it

2  as if they are nearby either; they are apparently from all over the place including Pennsylvania,

3  Texas, Illinois, Washington, etc. This is not evidence for the convenience of Wyoming.

4      The same is true for the 16 witnesses listed at paragraph 20 for the vague topic

5  "familiar[ity] with the Idaho investment"—only one of the 16 alleged witnesses is even located in

6  Wyoming. Indeed, all but 16% of the Idaho investment (owned by Darrick and Julia Walker) is

7  owned by people[4] in California, i.e. important witnesses to its dealing, to the that issue matters:

8  David Britz (45%), Brandon Walker (16%), Heidi Walker (15%), Sharon Walker (3%), and Hill-

9  Tully Partners (5%). Brandon Decl. ¶ 25. Again, no information is given as to Defendant's

10  witnesses possible testimony or why it matters to this case—why does, for instance, "Jeanna

11  Seeton" apparently some sort of member of the "Overlook Lodge Homeowners Association"

12  have anything to do with the issues in this case? As, discussed, this base attempt at quantity is no

13  replacement for quality.

14      Likewise, the list at paragraph 22 for "parties most knowledgeable with respect to WBT's

15  operations" contains no witnesses from Wyoming and includes three out of the six listed as from

16  Oregon, which is in fact closer to Fresno than Wyoming. This is not support for Defendant's

17  motion but the absence of it. Given Defendant's needed a strong showing, but provided a much

18  weaker one than Plaintiffs, this heavily weighs in favor of venue in California.

19      **3.  <u>Choice of Law and California's Interest in the Controversy</u>.**

20      As the forum state, California's choice of law rules govern this motion: "A federal court

21  sitting in diversity must look to the forum state's choice of law rules to determine the controlling

22  substantive law." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012); *Downing v.*

23  *Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001) ("In a diversity case, federal courts

24  apply the substantive law of the forum in which the court is located, including the forum's choice

25  of law rules."). Here, California's choice of law rule applies.

26      As to California interest in the action, Defendant tries to ignore that two of the three

27

28

---
[4] As part of WB Capital Partners IV, LLC.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO TRANSFER UNDER 28 USC §1404(a)**

1   entities in this action are California partnerships. Obviously, the laws of California govern these

2   partnerships and the complaint's cause of action directly pertain to them, even if they are

3   derivative, seeking a receivership for them (2nd Cause of Action), their dissolution (4th Cause of

4   Action), and an accounting (5th Cause of Action). Moreover, the sixth cause of action is

5   explicitly a state law claim for violation of California Penal Code Section 496. *In re Ferrero*

6   *Litigation*, 768 F. Supp 2d 1074, 1081 (S.D.Cal.2011) (citing Getz v. Boeing Co., 547 F.Supp.2d

7   1080, 1085 (N.D.Cal.2008)) ("[a] California district court is more familiar with California law

8   than district courts in other states.")

9        It does not matter whether they are the defendants or the actual plaintiffs in interest for

10  *convenience* purposes and Defendant's attempt to conflate the two issues (proper venue and

11  venue convenience) is without authority or merit. Darrick also claims without argument or

12  evidence that "it is undisputed that Darrick has currently and historically no management or

13  control of either [of the California partnerships]." This is false and misleading. Regardless of

14  whether he is literally a fiduciary, the actions delineated in the complaint and this motion are

15  improper attempts to exert control over the partnerships and their funds—diverting them to

16  himself—regardless of whether he was authorized to, by Darrick. Brandon Decl. ¶ 11-14. That is

17  what is at issue, not merely the corporate governance of BDH as Defendants erroneously claim.

18       Furthermore, it is not clear as to whether even BDH, originally incorporated in California,

19  would be governed under Wyoming law in this action. While Defendant is correct that California

20  has adopted the "internal affairs doctrine," this doctrine is narrowly applied only to "those

21  matters concerning the internal affairs of a corporation." *Medimpact Healthcare Sys., Inc. v.*

22  *IQVIA Inc.*, 646 F. Supp. 3d 1266, 1274 (S.D. Cal. 2022). This "vital limitation" means it does

23  not apply, as here, where 'with respect to the particular issue, some other state has a more

24  significant relationship ... to the parties and the transaction." *Lidow v. Superior Ct.*, 206 Cal. App.

25  4th 351, 359; Rest.2d Conf. of Laws, § 309, p. 332. Indeed, there "is no reason why corporate

26  acts" involving "the making of contracts, the commission of torts and the transfer of property…

27  should not be governed by the local law of different states." Rest.2d Conf. of Laws § 302, com. e,

28  p. 309. In a similar case, Medimpact Healthcare Sys., Inc. v. IQVIA Inc., 646 F. Supp. 3d 1266,

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

11

1278–79 (S.D. Cal. 2022), the Court found that the internal affairs doctrine did not apply in the case of breach of fiduciary duty:

> Here, in order to determine whether the exception to the internal affairs doctrine applies, the Court must consider whether California has a vital interest in the issues in the case. The breach of fiduciary duty cause of action alleges that Dr. Ghosheh, a director of MIA, **created opportunities for personal gain and diverted those opportunities to one shareholde**r, Dimensions, **causing harm to the other shareholder**, MI-HK,11 by misrepresenting that AIMS was not a PBM, stealing the JV's existing clients and aiding IQVIA in selling MedImpact's pharmaceutical data processed for the JV. (Dkt. No. 93, FAC ¶ 110.) **These actions by Dr. Ghosheh do not implicate corporate governance such as the election/appointment of directors or officers, issues related to by-laws, issuance of corporate shares, holding of meetings, voting, right to examine records, or reclassification of shares,** see Lidow, 206 Cal. App. 4th at 359, 141 Cal.Rptr.3d 729, **but concern conduct outside of corporate governance.** See Int'l Petroleum Prods. And Additives Co., Inc., 2021 WL 7448611, at *10. Therefore, the Court concludes that the exception to the internal affairs doctrine applies and will apply California law to the breach of fiduciary duty and related conspiracy causes of action." *Id.* (emphasis added).

Here, similarly, the issues in this case "do not implicate corporate governance such as the election/appointment of directors or officers, issues related to by-laws, issuance of corporate shares, holding of meetings, voting, right to examine records, or reclassification of shares." *Id.* As such, even BDH, the only non-California entity in this case, may be properly governed by California.

Moreover, beyond broadly stating that BDH is a Wyoming entity, Defendant fails to enunciate why California would be unable to apply Wyoming law or how it materially differs in this case, if it were applicable: "courts in [one state] are fully capable of applying [another state's] substantive law." *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009). In addition, it seems likely "[t]he resolution of this action will depend less on expertise in [California] law and more on the court's fact-finding function" i.e. adjudicating the forgeries and whether or not Darrick improperly diverted funds without authorization. *Barnstormers, Inc. v. Wing Walkers, LLC*, No. 09cv2367, 2010 WL 2754249, at *3 (S.D.Cal. July 9, 2010). As such, California has a strong interest in this case, its law governs most if not all

1 of the action (and to the limited extent it does not, it is perfectly capable of applying another's

2 state substantive law), and this factor thus leans in favor of California.

3        Briefly, to address Defendant's meritless forum-shopping accusation (Moving Papers

4 9:21-22), let it be repeated that both Plaintiffs, the two partnerships Defendants (or Plaintiffs as

5 they may actually be), and even Defendant himself at least some of the time, reside in California.

6 That Plaintiffs have somehow forum shopped by bringing this action in their *home district*, where

7 they allege the actions of the claim occurred, is ridiculous. See *Barnes & Noble, Inc. v. LSI*

8 *Corp.*, 823 F. Supp. 2d 980, 992 (N.D. Cal. 2011) ("while Defendants allege forum shopping, the

9 only evidence to which they point besides the fact that Plaintiffs filed suit first is that they filed

10 suit in their chosen forum over Defendants' chosen forum.")[5]

11      **4. Other Concerns.**

12          **i. The Location Where the Relevant Agreements were Negotiated and Executed**

13          **and Access to evidence.**

14        Unlike the convenience of witnesses, the "ease of access to documents does not weigh

15 heavily in the transfer analysis, given that advances in technology have made it easy for

16 documents to be transferred to different locations." *Metz v. U.S. Life Ins. Co. in City of New York*,

17 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009); *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d

18 757, 778 (E.D.Tex.2000) (holding that "the accessibility and location of sources of proof should

19 weigh only slightly in this court's transfer analysis, particularly since these factors have been

20 given decreasing emphasis due to advances in copying technology and information storage.").

21 While BDH's Wyoming office no doubt has copies of relevant documents, BDH's accountants in

22 Fresno—Moss Adams—no doubt have copies as well. Furthermore, all of the documents relevant

23 to the California partnerships or BDH documents executed by Plaintiffs, such as the original

24 incorporation in California and its merge out to Wyoming, were executed in California. This

25 admittedly minor factor does little to carry Defendant's heavy burden.

26

27

28 [5] Finding "no showing of different substantive law between [the forums]… that would motivative forum shopping"; "no indication that Plaintiffs rushed to the courthouse"; nor did Plaintiff "choose a forum with no relevance to the parties, so as to suggest the possibility of forum-shopping." *Id.*

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

ii. **Differences in Forum Costs and Ability to Compel Witnesses.**

Without authority, Defendant erroneously first construes this factor to mean a base comparison of the legal specialties fees averages in the two states as whole. Assuming that Defendant's counsel is not trying to talk themselves out of a job, this is not the analysis. Indeed, none of the cases cited make this comparison. Defendant also makes this claim without evidence, as his "source" is hidden behind a paywall and not actually in evidence. Even putting all of these disqualifying issues aside, the comparison is obviously flawed on its face: in 2024 there were 175,883 active licensed attorneys in California and 1,726 in Wyoming.[6] Naturally, as a state of this size, California has a wide range of cost of living and fee rates throughout the state, making a blanket comparison inherently flawed—California is not a monolith. Indeed, among the state, fees in Fresno, the Central Valley, and the Eastern District do tend to be lower than their counterparts in the Bay Area and Los Angeles.

Defendant next makes claims about the cost of expert witness depositions without providing evidence. This is insufficient. Furthermore, in assessing the convenience of the witnesses, expert witnesses are "entitled to little weight, if any." *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 640 (S.D.N.Y. 1999). It follows logically that for costs, a less important concern, their importance is likewise entitled to even less consideration. Furthermore, given that California law should govern this case, Defendants arguments about travel expenses is without merit and in fact inverted—it will be much more costly to transport the many important California witnesses to Wyoming.

Defendant's final argument on this point is no more convincing, merely stating vaguely "A court in Wyoming, being geographically closer to the Midwest, is more likely to be seen as a reasonable venue for a witness residing there." Moving Papers 10:15-16. Defendant's argument is stated in this indirect manner because, as discussed, the majority, if not all of the important third-party witnesses are in California and the vast majority of Defendant's proposed witnesses are not even located in Wyoming or even necessarily in the greater Midwest, as discussed.

---

[6] ABA Profile of the Legal Profession 2024, Demographics, Lawyers per Capita per State 2024, https://www.americanbar.org/news/profile-legal-profession/demographics/ (last accessed January 20, 2024).

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

14

1  **iii.  Court Congestion Does Not Favor Wyoming.**

2      Defendant claims "this Court is significantly congested, consistently carrying the average

3  weighted caseloads equal or close to twice the national average." Moving Papers 12:11-12.

4  However, a review of their link presents no reference to California except to say filings for

5  criminal immigration offenses increased "10 percent in the Southern District of California (after

6  growing 58 percent last year)." What Defendant is referring to is unclear—even after reviewing

7  associated links on the cited page—and their claim is left unsupported. Moreover, Defendant's

8  cite no source for their claim that "Wyoming has seen a decrease in filing in recent years."

9      The Federal Judicial Caseload Statistics for 2024[7] do however reveal that the median

10  time from filing to disposition of cases in the Eastern District of California is less than the district

11  of Wyoming—California's Eastern District average for 2024 is 9.9 months, while Wyoming's

12  average is 10.5. Likewise, the average for matters where there is no court action is also in the

13  Eastern District's favor at 6.9 to Wyoming's 7.2 months. This is because, though there certainly

14  are more cases in California, there is also obviously more infrastructure to handle such volume.

15  This admittedly minor factor weighs further in favor of Plaintiffs and California.

16  **IV.**

17  **CONCLUSION.**

18      For all the reasons above and those that may be adduced at oral argument, the clear

19  balance of factors leans towards Plaintiffs and Defendant has thus failed to meet his heavy burden

20  of showing "the balance is strongly in favor of the defendant." *Gulf Oil Corp.*, 330 U.S. at 508 .

21  The Plaintiffs' choice of forum should not be disturbed.

22  DATED:  January 23, 2025        WHELAN LAW GROUP,

23                  A Professional Corporation

24

25                  Brian D. Whelan, Attorney for Heidi Hallenberg

26                  and Bradon Walker

27  [7] Civil Federal Judicial Caseload Statistics (March 31, 2024), Median Time From Filing to Disposition of Civil Cases, by Action Taken:

28  https://www.uscourts.gov/data-news/data-tables/2024/03/31/federal-judicial-caseload-statistics/c-5 (last accessed January 20, 2025).

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

1

## PROOF OF SERVICE

I am employed in the County of Fresno, State of California. I am over the age of 18 years and not a party to this action. My business address is: Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720. On January 23, 2025, I caused to be served the within document(s): **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

( )   **BY PERSONAL SERVICE:** by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )   **BY EXPRESS MAIL DELIVERY:** by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

(X)   BY CM/ECF NOTICE OF ELECTRONIC FILING: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF (TrueFiling) system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted under the Court rules.

Patrick D. Toole, Esq.
Timothy Jones, Esq.
Daniel J. Frea, Esq.
WANGER JONES HELSLEY PC
265 E. River Park Circle, Suite 310
Fresno, California 93720
Tel: (559) 233-4800, Ext. 102
Fax: (559) 233-9330
Email: ptoole@wjhattorneys.com; tjones@wjhattorneys.com;
dfrea@wjhattorneys.com
cc: tjones@wjhattorneys.com; knoble@wjhattorneys.com;
dpell@wjhattorneys.com

I declare under penalty of perjury under the laws of the United States and those of the State of California, that the above is true and correct.

Executed on January 23, 2025, at Fresno, California.

STACEY VUE

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

1   Brian D. Whelan, Esq.  (SBN 256534)
    brian@whelanlawgroup.com
2   Joseph Stolz, Esq. (SBN 346959)
    joseph@whelanlawgroup.com
3   WHELAN LAW GROUP, A Professional Corporation
    1827 East Fir Avenue, Suite 110
4   Fresno, California  93720
    Telephone:  559-437-1079
5   Facsimile:  559-437-1720
6
7   Attorneys for:  Plaintiffs HEIDI HALLENBERG and BRANDON WALKER

8                    **UNITED STATES DISTRICT COURT**

9                   **EASTERN DISTRICT OF CALIFORNIA**

10                          **FRESNO DIVISION**

11

12  HEIDI HALLENBERG, AND BRANDON          Case No. 1:24-CV-01486-BAM
    WALKER,
13                                         **HEIDI HALLENBERG'S**
                 Plaintiffs,               **DECLARATION IN OPPOSITION TO**
14                                         **DEFENDANT'S MOTION TO**
    v.                                     **TRANSFER UNDER 28 USC §1404(a)**
15
    DARRICK WALKER, BDH GROUP, LLC,        Date:   February 14, 2024
16  B & D WALKER FARMS & HEIDI             Time:   9:00 a.m.
    WALKER, A California General           Courtroom: 8 (6th Floor)
17  Partnership, B & D WALKER FARMS, A     Judge: Honorable Barbara A. McAuliffe
    California General Partnership, AND DOES
18  1 THROUGH 20, INCLUSIVE,               Trial Date:

19               Defendants.

20

21

22

23

24

25

26

27

28

**DECLARATION OF HEIDI HALLENBERG IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

0

I, Heidi Hallenberg, declare as follows:

    1.    I have personal knowledge of the facts set forth, and I could competently testify to these facts, if called as a witness.

    2.    The Walker family has resided and done business in California for generations. I too reside and work in California, as done the majority of the family. In California, I help oversee the family enterprise and the two California partnerships' California based farms. Darrick and Brandon Walker are my brothers.

    3.    I have no residence in Wyoming and I do not travel to Wyoming, and I have never even been to Wyoming.

    4.    Darrick has a California residence in Newport Beach, which he stays at on a nearly monthly basis. He also pays property taxes and has business offices in Danville (through UBS), Fresno, and Newport Beach. Altogether, Darrick frequently makes trips to California to manage personal and business matters in Fresno.

    5.    I am a member of BDH Group LLC. BDH was originally incorporated in California in 2008. In 2013, it was merged out to Wyoming. Beyond the fact that BDH now resides in Wyoming, I have no business in Wyoming. While BDH's Wyoming office no doubt has copies of relevant documents, its accountants are all located in Fresno and have copies as well.

    6.    BDH has substantial ties to California, where it was originally incorporated. BDH has substantial California property holdings including four industrial lots in Merced, two in Tulare, and one in Snelling. Additionally, it also had a 40 acre pistachio orchard in Madera county that was sold. BDH also has paid for and subsidized Central Valley AG ("CVAG"), which has offices in California.  (CVAG is also referred to as CVAP or Central Valley Ag Partners and there have been at least eleven different CVAP entities over the years – some of which BDH has paid money to or on their behalf – which we did not learn until this last year.)

    7.    Darrick has operated and controlled the finances of BDH as if they were 100% his own, even where I objected (including an unauthorized withdrawal of $1M). The following

**DECLARATION OF HEIDI HALLENBERG IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

1

1    expenses were for Darrick's sole benefit, as opposed to BDH, and were misappropriated out of

2    BDH accounts: Property Taxes for his: Orange County Home and Teton County Home;

3    Automobile expenses for his children; Extensive personal travel via private jets;  Insurance not

4    related to BDH assets or activities; Supplies for ag land not even owned by BDH: Grape stakes,

5    and the list goes on. In 2024, we hired a forensic accountant to review records supplied by Moss

6    Adams to determine those moneys Darrick took from BDH for his personal use. For the limited

7    years that Moss Adams handled the accounting (2018-onwards), what we could trace as

8    misappropriated moneys was a range between $7,027,277.85 on the low end and $10,201,447.85

9    on the higher end – and this is a conservative set of figures without regard for interest or prior

10   accounting records. Neither Brandon nor I consented to Darrick's extravagant personal uses of

11   BDH resources for Darrick's sole benefit nor did we come to learn of the use until 2023 at which

12   point we tried to informally resolve the disputes but could not.

13        8.    In September 2023, myself and Bradon Walker were contacted by Jenhi Ciapponi,

14   who was historically been the banker for the Walker entities, and Fresno Madera Farm Credit for

15   signatures pertaining to a loan that Darrick had applied for without Plaintiffs' knowledge. After

16   explaining that we had not authorized such a loan, Ciapponi indicated that she had just received

17   me and Brandon's signatures from Darrick. This was false and the signatures were forgeries.

18        9.    I am also a partner in one of the California partnerships at issue in this case, B &

19   D Walker Farms & Heidi Walker. This partnership farms California crops.  In 2024, Darrick has

20   contacted processers and hullers to divert payments on these partnerships to accounts he solely

21   holds. True and correct copies of emails and letters I have received to that effect are attached as

22   Exhibit "A." (Banking information has been redacted.)

23        10.   As to these entities Darrick has improperly exerted control over and diverted funds

24   away from these California partnerships towards himself. In particular, Darrick instructed

25   principals at the Wonderful Processing Company (located in California)—which processes the

26   partnerships' California crops—to divert funds away from the partnership accounts to an account

27   solely controlled by himself.

28        11.   Darrick did the same things for the California almond crops, contacting the

**DECLARATION OF HEIDI HALLENBERG IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

2

1   Almond Company, an exporter in Madera, telling them not to remit payment for the California

2   almonds to partnership accounts where either Brandon or I had access. As a result, the

3   partnerships' operations are and will be dramatically impacted as the capital needed to fund those

4   operations have been improperly diverted away to Darrick.

5       12.   Darrick also demonstrated control over B&D Walker Farms by using $600,000

6   from the partnership to close on a property purchase, an amount he has yet to repay. Additionally,

7   Central Valley AG ("CVAG") has an office in California and facilitated the initial deposit for

8   some of the property purchases by BDH  and received an acquisition fee.

9       13.   Aside from Darrick Walker, my brother, the majority, if not all, pertinent

10  witnesses to the issues in this case reside in California.

11      14.   **Lisa Harrison** – Darrick's right-hand man. She is his secretary in Danville,

12  California and is responsible for control for all the UBS accounts for BDH and the two California

13  partnerships. As discussed, this is the money at issue that was improperly diverted. Anyone who

14  wants access to said money has to go through Ms. Harrison. A primary issue in this case is the

15  improper movement of these funds to and from these accounts, and Ms. Harrison's testimony will

16  be essential to resolving that issue. Recently, when I asked for $20.00 out of the account, for

17  example, this request needed to pass through Lisa.

18      15.   **James Mathisrud** – One of the business partners that owns CVAG and is located

19  in Orange County, California. BDH has ownership interest in some of the CVAG's and was in

20  the initial deposit for some of the property purchases at issue and received an acquisition fee. Mr.

21  Mathisrud's testimony regarding how they are operated will be important as to the loan

22  transaction and disentangling BDH's finances.

23      16.   **Jenhi Ciapponi** – the original whistleblower on the forgeries and fraudulent

24  practices at issue. She has historically been the banker for the Walker entities. Located at Fresno

25  Madera Farm Credit in California. Will be able to testify to the forgeries regarding the improper

26  loan Darrick sought.

27      17.   **David Lyons** – Agreed to be an important witness by both Parties. Defendant also

28  admit that Mr. Lyons is located in Las Vegas, which is much closer to California than Wyoming.

**DECLARATION OF HEIDI HALLENBERG IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

18.    **David Britz** – A California businessman and farmer, Britz has partial ownership of the Idaho investment, Fedex Building, and WB Timber LLC, alongside BDH. Though a more minor issue, his testimony will give insight into how these properties and transactions surrounding them occurred and Darrick due diligence or lack thereof.

19.    **Wonderful Processing Company** – Located in California. Darrick instructed principals at the Wonderful Processing Company—which processes the partnerships' California crops—to divert funds away from their accounts to an account solely controlled by Darrick. This improper diversion is part of the basis of the lawsuit and the principal's testimony regarding instructions given by Darrick is central to this case.

20.    **Almond Company** – Located in Madera, California. Darrick told the Almond Company to not remit payment to partnership accounts where either Brandon or Heidi had access. This improper diversion is part of the basis of the lawsuit and the principal's testimony regarding instructions given by Darrick is central to this case.

21.    **Moss Adams - Michael Holtermann** – Moss Adams' is the accounting firm for all the named entities in this action. Michael Holtermann, at the local Fresno branch, is the Walker family's accountant and handles those specific accounts for the named entities. Thus, Michael Holterman will be able to testify to financial operation and records of these named entities.

22.    **Moore, Grider & Company** – Rick Holland – Another Walker family accounting firm. It operates solely out of Fresno. Holland handled the named entities finances prior to the merge out to Wyoming. Moore, Grider, and Company continue to handle WB entities. This witness will be able to testify to the WB entities financial operations and records.

/ / /

/ / /

/ / /

/ / /

**DECLARATION OF HEIDI HALLENBERG IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

4

1    23.    The Idaho investment is owned, all but 16%, by people and entities that reside in

2   California: David Britz (45%), Brandon Walker (16%), myself (15%), Sharon Walker (3%), and

3   Hill-Tully Partners (5%).

4        I declare under penalty of perjury under the laws of the United States and those of the

5   State of California, that the above is true and correct.

6        Executed on January 23, 2025, at Fresno, California.

*Signed by:*

*Heidi Hallenberg*

956E604C08E44A4...

8                                        Heidi Hallenberg

**DECLARATION OF HEIDI HALLENBERG IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

5

Exhibit A

**From:** darrick@centralvalleyagpartners.com (Darrick Walker)
<darrick@centralvalleyagpartners.com>
**Sent:** 08/27/24 7:52 PM
**To:** Sara <sara@thealmondcompany.com>; Lonzo Bopp <jameswalkerfarms@aol.com>
**Subject:** ACH Heidi Walker Farms

Please see attached and confirm receipt for the upcoming payments. Thank you.

Darrick J. Walker
Central Valley Ag Partners
15 Corporate Plaza, suite 250
Newport Beach, CA 92660

---

**From:** 5592812655@mms.att.net <5592812655@mms.att.net>
**Sent:** Tuesday, August 27, 2024 6:05:57 PM
**To:** Darrick Walker <darrick@centralvalleyagpartners.com>
**Subject:**



## ACH TRANSFER AUTHORIZATION

_Heidi Walker Forms_, hereby authorizes The Almond Company to initiate ACH transfers
(Business Name)
to my: □ **Checking Account** or □ **Savings Account** indicated below, at the depository
Financial Institution named below. I acknowledge that the authority will remain in effect until I
have cancelled it in writing.

Financial Institution _VBS_                    Branch _Walnut Creek_
City _Walnut Creek_                            State _CA_ Zip _____

Routing
Number ████████████

Account
Number ████████████

**From:** Darrick Walker <darrick@centralvalleyagpartners.com>
**Date:** August 28, 2024 at 7:18:14 AM PDT
**To:** Jean Grabowski <jean@panochecreek.com>, Lonzo Bopp <jameswalkerfarms@aol.com>
**Subject: Re: ACH Heidi Walker Farms**

Thank you that is good to know

Darrick J. Walker
Central Valley Ag Partners
15 Corporate Plaza, suite 250
Newport Beach, CA 92660

---

**From:** Jean Grabowski <jean@panochecreek.com>
**Sent:** Wednesday, August 28, 2024 8:11:31 AM
**To:** Darrick Walker <darrick@centralvalleyagpartners.com>; Lonzo Bopp <jameswalkerfarms@aol.com>
**Subject:** RE: ACH Heidi Walker Farms

Hi Darrick,

Received.  This is the same information that is currently on file.

Have a great day.
Jeannie

**From:** Darrick Walker <darrick@centralvalleyagpartners.com>
**Sent:** Tuesday, August 27, 2024 7:49 PM
**To:** Jean Grabowski <jean@panochecreek.com>; Lonzo Bopp <jameswalkerfarms@aol.com>
**Subject:** ACH Heidi Walker Farms

Hi Jeanie,

See attached and please confirm receipt.

Darrick J. Walker
Central Valley Ag Partners
15 Corporate Plaza, suite 250
Newport Beach, CA 92660

---

**From:** 5592812655@mms.att.net <5592812655@mms.att.net>
**Sent:** Tuesday, August 27, 2024 6:04:18 PM
**To:** Darrick Walker <darrick@centralvalleyagpartners.com>

Add me to the list please.

Darrick J. Walker
Central Valley Ag Partners
15 Corporate Plaza, suite 250
Newport Beach, CA 92660

---

**From:** Sara <sara@thealmondcompany.com>
**Sent:** Wednesday, August 28, 2024 10:15:00 AM
**To:** Darrick Walker <darrick@centralvalleyagpartners.com>; Lonzo Bopp <jameswalkerfarms@aol.com>
**Subject:** RE: ACH Heidi Walker Farms

Good morning Darrick,

Received, I will initiate payment into this account today and it should be deposited tomorrow.

Also, for all the other entities, would you like me to continue sending the information to Brandon and Heidi or do I need up send it elsewhere?

Please advise.

Thank you!

*Sara Samaniego*
**Grower Accountant**
The Almond Company
<image001.jpg>

(559) 660-5808

**From:** darrick@centralvalleyagpartners.com (Darrick Walker) <darrick@centralvalleyagpartners.com>
**Sent:** 08/27/24 7:52 PM
**To:** Sara <sara@thealmondcompany.com>; Lonzo Bopp <jameswalkerfarms@aol.com>
**Subject:** ACH Heidi Walker Farms

Please see attached and confirm receipt for the upcoming payments. Thank you.

Darrick J. Walker
Central Valley Ag Partners
15 Corporate Plaza, suite 250
Newport Beach, CA 92660



From: Sara <sara@thealmondcompany.com>
Date: August 28, 2024 at 1.43 39 PM PDT
To: darrick@centralvalleyagpartners com, Lonzo Bopp <jameswalkerfarms@aol com>
Subject: RE: ACH Heidi Walker Farms

Correct. See attached for the other entities payment info.

A live check was mailed for James B. Walker

*Sara Samaniego*
**Grower Accountant**
The Almond Company



(559) 660-5808

From: darrick@centralvalleyagpartners.com (Darrick Walker)
<darrick@centralvalleyagpartners.com>
Sent: 08/28/24 11:09 AM
To: Sara <sara@thealmondcompany.com>; Lonzo Bopp <jameswalkerfarms@aol.com>
Subject: Re: ACH Heidi Walker Farms

So the only bank changes then were for B&D Walker/Heidi Walker and Heidi
Walker Farms, correct?

Darrick J. Walker
Central Valley Ag Partners
15 Corporate Plaza, suite 250
Newport Beach, CA 92660

From: Darrick Walker <darrick@centralvalleyagpartners.com>
Sent: Wednesday, August 28, 2024 12:08:12 PM
To: Sara <sara@thealmondcompany.com>; Lonzo Bopp <jameswalkerfarms@aol.com>
Subject: Re: ACH Heidi Walker Farms

**JAMES B. WALKER FAMILY LIMITED PARTNERSHIP**
470 East Herndon Avenue, Suite #206 • Fresno, CA 93720 • (559) 432-5200 • FAX (559) 432-5204

November 1, 2024

The Almond Company
Attn: Scott Eastom
scott@thealmondcompany.com

Re: Authorized Representatives of Walker family entities

Dear Scott,

We are writing to clarify a matter concerning the following properties owned by certain Walker family entities:

Field 30, 155 acres (APN 075-070-24S)
Field C7, 156 acres (APN 038-160-44S)
Field C8, 156 acres (APN 038-160-46S)

In 2023, our office informed you that the above fields were to be attributed to Hiedi Walker Farms (HWF). This was a mistake. HWF neither owns nor leases the above properties.

Field 30 is owned by Walker Five Points LLC. Jim Walker is the sole manager of Walker Five Points LLC and is the only person authorized to execute documents on its behalf. Fields C7 and C8 are owned by Walker Huron LLC. Darrick Walker is the sole manager of Walker Huron LLC and is the only person authorized to execute documents on its behalf.

We kindly request that you update your records to reflect Walker Five Points LLC as the grower for Field 30 and Walker Huron LLC as the grower for C7 and C8. Going forward, please direct all payments for the 2024 crop accordingly.

With respect to the final payments for the 2023 crop, all payments for Field 30 should be payable to Walker Five Points LLC and all payments for Fields C7 and C8 should be payable to Walker Huron LLC.

We will treat all previous 2023 crop payments for Field 30 as payments to Walker Five Points LLC and all previous 2023 crop payments for C7 and C8 as payments to Walker Huron LLC, notwithstanding the fact that such payments were made to HWF based on the information provided to you.

This letter is also intended to formally notify you of the individuals authorized to act on behalf of the following entities in all matters related to our business relationship with the Almond Company:



| Entity | General Partner | Authorized Representative |
|---|---|---|
| Walker | N/A | James B. Walker, Owner |
| Walker Family Limited Partnership | Walker Management LLC | James B. Walker, Manager |
| Walker Family II Limited Partnership | Walker Management LLC | James B. Walker, Manager |
| ...er Farms LP | Walker Management LLC | James B. Walker, Manager |
| ...e Points LLC | N/A | James B. Walker, Manager |
| ...ron LLC | N/A | Darrick Walker, Manager |

...dividuals are fully authorized to engage in discussions, make decisions, and execute ...als as they pertain to our business together. Any instructions, authorizations, or requests ...r parties should not be considered binding unless specifically confirmed by one of the ...d representatives identified above.

...u for updating your records to reflect these changes. If you have any questions, please ...sitate to reach out to us directly.

Jim Walker

Darrick Walker

**PROOF OF SERVICE**

I am employed in the County of Fresno, State of California. I am over the age of 18 years and not a party to this action. My business address is: Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720. On January 23, 2025, I caused to be served the within document(s): **HEIDI HALLENBERG'S DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

**( )   BY PERSONAL SERVICE:** by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

**( )   BY EXPRESS MAIL DELIVERY:** by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

**(X)**   BY CM/ECF NOTICE OF ELECTRONIC FILING: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF (TrueFiling) system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted under the Court rules.

    Patrick D. Toole, Esq.
    Timothy Jones, Esq.
    Daniel J. Frea, Esq.
    WANGER JONES HELSLEY PC
    265 E. River Park Circle, Suite 310
    Fresno, California  93720
    Tel: (559) 233-4800, Ext. 102
    Fax: (559) 233-9330
    Email: ptoole@wjhattorneys.com; tjones@wjhattorneys.com;
     dfrea@wjhattorneys.com
    cc: tjones@wjhattorneys.com; knoble@wjhattorneys.com;
    dpell@wjhattorneys.com

I declare under penalty of perjury under the laws of the United States and those of the State of California, that the above is true and correct.

Executed on January 23, 2025, at Fresno, California.

STACEY VUE

**DECLARATION OF HEIDI HALLENBERG IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

1  Brian D. Whelan, Esq.  (SBN 256534)
   brian@whelanlawgroup.com
2  Joseph Stolz, Esq. (SBN 346959)
   joseph@whelanlawgroup.com
3  WHELAN LAW GROUP, A Professional Corporation
4  1827 East Fir Avenue, Suite 110
   Fresno, California  93720
5  Telephone:   559-437-1079
   Facsimile:   559-437-1720
6
7  Attorneys for:  Plaintiffs HEIDI HALLENBERG and BRANDON WALKER

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10                              **FRESNO DIVISION**

11

12  HEIDI HALLENBERG, AND BRANDON          Case No. 1:24-CV-01486-BAM
    WALKER,
13                                          **BRANDON WALKER'S**
                    Plaintiffs,             **DECLARATION IN OPPOSITION TO**
14                                          **DEFENDANT'S MOTION TO**
    v.                                      **TRANSFER UNDER 28 USC §1404(a)**
15
    DARRICK WALKER, BDH GROUP, LLC,         Date:     February 14, 2024
16  B & D WALKER FARMS & HEIDI              Time:     9:00 a.m.
    WALKER, A California General            Courtroom: 8 (6th Floor)
17  Partnership, B & D WALKER FARMS, A      Judge: Honorable Barbara A. McAuliffe
    California General Partnership, AND DOES
18  1 THROUGH 20, INCLUSIVE,
                                            Trial Date:
19                  Defendants.
20

21

22

23

24

25

26

27

28

          **DECLARATION OF BRANDON WALKER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
               **DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**
                                          0

1    I, Brandon Walker, declare as follows:

2        1.    I have personal knowledge of the facts set forth, and I could competently testify to

3    these facts, if called as a witness.

4        2.    The Walker family has resided and done business in California for generations. I

5    too reside and work in California, as does the majority of the family. In California, I help oversee

6    the family enterprise and the two California partnerships' California based farms. Darick Walker

7    and Heidi Hallenberg are my siblings.

8        3.    I have no residence in Wyoming and I do not travel to Wyoming with any

9    regularity. The last time I was there was approximately April 2021. I have been there twice in my

10   life.

11       4.    By contrast, Darrick has a California residence in Newport Beach, which he stays

12   at on a nearly monthly basis. He also pays property taxes and has business offices in Danville (his

13   UBS office) and Fresno, which he treats as his farm office. Darrick also maintains an office in

14   Newport Beach.  Altogether, Darrick frequently makes trips to California to manage personal and

15   business matters in Fresno.

16       5.    I am a member of BDH Group LLC. BDH was originally incorporated in

17   California in 2008. In 2013, it was merged out to Wyoming. It was only at Darrick's request that

18   I assented to the merging out to Wyoming, which was done at his initiative. I executed the

19   document for this merger in California. I do not contest the fact that this occurred, but

20   Defendant's erroneous framing that it was done at my request. Beyond the fact that BDH now

21   resides in Wyoming, I have no business in Wyoming. While BDH's Wyoming office no doubt

22   has copies of relevant documents, its accountants in Fresno no doubt have copies as well.

23       6.    BDH naturally has substantial ties to California, where it was originally

24   incorporated. BDH has substantial California property holdings including four industrial lots in

25   Merced, two in Tulare, and one in Snelling. Additionally, it also had a 40 acre pistachio orchard

26   in Madera county that was sold. BDH also has paid for and subsidized Central Valley AG

27   ("CVAG"), which has offices in California. (CVAG is also referred to as CVAP or Central Valley

28   Ag Partners and there have been at least eleven different CVAP entities over the years – some of

**DECLARATION OF BRANDON WALKER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

1

1  which BDH has paid money to or on their behalf – which we did not learn until this last year.)

2       7.    Darrick has operated and controlled the finances of BDH as if they were 100% his

3  own, even where I objected (including an unauthorized withdrawal of $1M). The following

4  expenses were for Darrick's sole benefit and were misappropriated out of BDH accounts:

5  Property Taxes for his: Orange County Home and Teton County Home; Automobile expenses for

6  his children; Extensive personal travel via private jets;  Insurance not related to BDH assets or

7  activities; Supplies for ag land not even owned by BDH: Grape stakes, and the list goes on. We

8  hired a forensic accountant to review records supplied by Moss Adams to determine those

9  moneys Darrick took from BDH for his personal use. What we could trace was a range between

10  $7,027,277.85 on the low end and $10,201,447.85 on the high end – and this is a conservative set

11  of figures without regard for interest. Neither Heidi nor I consented to Darrick's extravagant

12  personal uses of BDH resources for Darrick's sole benefit nor did we come to learn of the use

13  until 2023 at which point we tried to informally resolve the disputes, but could not.

14       8.    In September 2023, myself and Heidi Hallenberg were contacted by Jenhi

15  Ciapponi, who was historically been the banker for the Walker entities, and Fresno Madera Farm

16  Credit for signatures pertaining to a loan that Darrick had applied for without Plaintiffs'

17  knowledge. After explaining that we had not authorized such a loan, Ciapponi indicated that she

18  had just received me and Heidi's signatures from Darrick. This was false and the signatures were

19  forgeries.

20       9.    Further forgeries have been uncovered. Darrick forged my signature on critical

21  documents filed with the California Secretary of State, including documents designating Brandon

22  as the registered agent for WB Timber LLC and WBCP4 LLC, without my knowledge or

23  consent. Forged signatures also appear on filings for WBCP4, which are included in Exhibit D of

24  Document 5.2 (page 25) and Exhibit C of Document 5.3 (page 12).

25       10.    Similarly, the sale of a Fresno FedEx property and the subsequent purchase of a

26  Walgreens in Minneapolis and a potato farm in Idaho occurred without my knowledge or

27  consent. I only learned of these transactions in late 2023, well after their completion.

28       11.    I am also a partner in the two California partnerships at issue in this case, B & D

**DECLARATION OF BRANDON WALKER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

2

1    Walker Farms & Heidi Walker and B & D Walker Farms. These partnerships farm California

2    crops.

3         12.    As to these entities Darrick has improperly exerted control over and diverted funds

4    away from these California partnerships towards himself. In particular, Darrick instructed

5    principals at the Wonderful Processing Company (located in California)—which processes the

6    partnerships' California crops—to divert funds away from the partnership accounts to an account

7    solely controlled by himself.

8         13.    Darrick did the same things for the California almond crops, contacting the

9    Almond Company, an exporter in Madera, telling them not to remit payment for the California

10   almonds to partnership accounts where either Heidi or I had access.. As a result, the partnerships'

11   operations are and  will be dramatically impacted as the capital needed to fund those operations

12   have been improperly diverted away to Darrick.

13        14.    Darrick also demonstrated control over B&D Walker Farms by using $600,000

14   from the partnership to close on a property purchase, an amount he has yet to repay. Additionally,

15   CVAG has an office in California and facilitated the initial deposit for some of the property

16   purchases by BDH  and received an acquisition fee.

17        15.    Aside from Darrick Walker, the majority, if not all, pertinent witnesses to the

18   issues in this case reside in California.

19        16.    **Lisa Harrison** – Darrick's right-hand man. She is his secretary in Danville,

20   California and is responsible for control for all the UBS accounts for BDH and the two California

21   partnership. As discussed, this is the money at issue that was improperly diverted. Anyone who

22   wants access to said money has to go through Ms. Harrison. A primary issue in this case is the

23   improper movement of these funds to and from these accounts, and Ms. Harrison's testimony will

24   be essential to resolving that issue. Recently, when I asked for 20.00 out of the account, for

25   example, this request needed to pass through Lisa.

26        17.    **James Mathisrud** – One of the business partners that owns CVAG and is located

27   in Orange County, California. BDH has ownership interest in some of the CVAG's and was in

28   the initial deposit for some of the property purchases at issue and received an acquisition fee. Mr.

**DECLARATION OF BRANDON WALKER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

3

1   Mathisrud's testimony regarding how they are operated will be important as to the loan

2   transaction and disentangling BDH's finances.

3        18.   **Jenhi Ciapponi** – the original whistleblower on the forgeries and fraudulent

4   practices at issue. She has historically been the banker for the Walker entities. Located at Fresno

5   Madera Farm Credit in California. Will be able to testify to the forgeries regarding the improper

6   loan Darrick sought.

7        19.   **David Lyons** – Agreed to be an important witness by both Parties. Defendant also

8   admit that Mr. Lyons is located in Las Vegas, which is much closer to California than Wyoming.

9        20.   **David Britz** – A California businessman and farmer, Britz has partial ownership

10  of the Idaho investment, Fedex Building, and WB Timber LLC, alongside BDH. Though a more

11  minor issue, his testimony will give insight into how these properties and transactions

12  surrounding them occurred and Darrick due diligence or lack thereof. There are other members of

13  the Britz family that may also be witnesses, including David Britz' daughters who have an

14  ownership interest in the Idaho farming operation – all of whom reside in California.

15       21.   **Wonderful Processing Company** – Located in California. Darrick instructed

16  principals at the Wonderful Processing Company—which processes the partnerships' California

17  crops—to divert funds away from their accounts to an account solely controlled by Darrick. This

18  improper diversion is part of the basis of the lawsuit and the principal's testimony regarding

19  instructions given by Darrick is central to this case.

20       22.   **Almond Company** – Located in Madera, California. Darrick told the Almond

21  Company to not remit payment to partnership accounts where either I or Heidi had access. This

22  improper diversion is part of the basis of the lawsuit and the principal's testimony regarding

23  instructions given by Darrick is central to this case.

24       23.   **Moss Adams - Michael Holtermann** – Moss Adams' is the accounting firm for

25  all the named entities in this action. Michael Holtermann, at the local Fresno branch, is the

26  Walker family's accountant and handles those specific accounts for the named entities. Thus,

27  Michael Holterman will be able to testify to financial operation and records of these named

28  entities.

**DECLARATION OF BRANDON WALKER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

1    24.    **Moore, Grider & Company** – Rick Holland – Another Walker family accounting

2 firm. It operates solely out of Fresno. Holland handled the named entities finances prior to the

3 merge out to Wyoming. Moore, Grider, and Company continue to handle WB entities. This

4 witness will be able to testify to the WB entities financial operations and records.

5    25.    The Idaho investment is owned, all but 16%, by people and entities that reside in

6 California: David Britz (45%), myself (16%), Heidi Walker (15%), Sharon Walker (3%), and

7 Hill-Tully Partners (5%).

8    I declare under penalty of perjury under the laws of the United States and those of the

9 State of California, that the above is true and correct.

10    Executed on January 23, 2025, at Fresno, California.



11

12    Brandon Walker

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF BRANDON WALKER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

**PROOF OF SERVICE**

1
2    I am employed in the County of Fresno, State of California. I am over the age of 18 years and not a party to this action. My business address is: Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720. On January 23, 2025, I caused to be served the within document(s): **BRANDON WALKER'S DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**
3
4

5    **( )    BY PERSONAL SERVICE:** by causing document(s) listed above to be personally
6    served to the person(s) at the address(es) set forth below.

7    **( )    BY EXPRESS MAIL DELIVERY:** by causing document(s) listed above to be deposited
8    with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

9    **(X)**    BY CM/ECF NOTICE OF ELECTRONIC FILING: I electronically filed the document(s)
10    with the Clerk of the Court by using the CM/ECF (TrueFiling) system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.
11    Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted under the Court rules.
12

13    Patrick D. Toole, Esq.
14    Timothy Jones, Esq.
      Daniel J. Frea, Esq.
15    WANGER JONES HELSLEY PC
      265 E. River Park Circle, Suite 310
16    Fresno, California  93720
      Tel: (559) 233-4800, Ext. 102
17    Fax: (559) 233-9330
18    Email: ptoole@wjhattorneys.com; tjones@wjhattorneys.com;
       dfrea@wjhattorneys.com
19    cc: tjones@wjhattorneys.com; knoble@wjhattorneys.com;
20    dpell@wjhattorneys.com

21    I declare under penalty of perjury under the laws of the United States and those of the
22    State of California, that the above is true and correct.
23
      Executed on January 23, 2025, at Fresno, California.
24
25                                                    _____
26                                                    STACEY VUE
27
28

**DECLARATION OF BRANDON WALKER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 USC §1404(a)**

## PROOF OF SERVICE

I am employed in the County of Fresno, State of California. I am over the age of 18 years and not a party to this action. My business address is: Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720. On January 23, 2025, I caused to be served the within document(s): **PLAINTIFFS' MOTION FOR RELIEF FROM LATE FILING DUE TO EXCUSABLE NEGLECT; AND DECLARATION OF BRIAN WHELAN IN SUPPORT THEREOF**

( )    **BY MAIL:** by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )    **BY PERSONAL SERVICE:** by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )    **BY EXPRESS MAIL DELIVERY:** by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

(X)    **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF (TrueFiling) system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted under the Court rules.

Patrick D. Toole, Esq.
Timothy Jones, Esq.
Daniel J. Frea, Esq.
WANGER JONES HELSLEY PC
265 E. River Park Circle, Suite 310
Fresno, California 93720
Tel: (559) 233-4800, Ext. 102
Fax: (559) 233-9330
Email: ptoole@wjhattorneys.com; tjones@wjhattorneys.com;
dfrea@wjhattorneys.com
cc: tjones@wjhattorneys.com; knoble@wjhattorneys.com;
dpell@wjhattorneys.com

I declare under penalty of perjury under the laws of the United States and the laws of State of California that the foregoing is true and correct.

Executed on January 23, 2025, at Fresno, California.

STACEY VUE

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

**PLAINTIFFS' MOTION FOR RELIEF FROM LATE FILING DUE TO EXCUSABLE NEGLECT, AND DECLARATION IN SUPPORT THEREOF**